THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CR-49-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| LINDA MCLAURIN BURNEY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion by defendant Linda Burney ("defendant") to suppress statements she made to agents of the North Carolina State Bureau of Investigation ("SBI") during an April 9, 2003 interview. [DE-18]. The government filed a response in opposition to the motion. [DE-19]. The court held an evidentiary hearing on October 29, 2008 to develop the record. Accordingly, this matter is ripe for review. For the reasons stated below, it is recommended that defendant's motion be denied.

## PROCEDURAL BACKGROUND

On May 7, 2008, defendant was charged by indictment with six counts of perjury in violation of 18 U.S.C. § 1623. [DE-1]. These offenses allegedly occurred when defendant testified before a federal grand jury on January 3, 2007. At the suppression hearing, defendant presented no witness testimony, but proffered her own affidavit in support of her motion. The government presented the testimony of SBI Agent Dirk German ("Agent German"), the lead agent who questioned defendant during the April 9, 2003 interview. Transcript of Hearing at 8:22-23 ("Tr."). Both parties submitted sworn statements and exhibits for consideration.

## STATEMENT OF THE FACTS

Defendant was employed as a medical assistant to Perry Reese, M.D. ("Reese") at Roseboro Urgent Care. Aff. of Linda McLaurin Burney ¶1 ("Burney Aff.") [DE-18-2]. On April 9, 2003, the SBI arrested Reese for allegedly writing prescriptions in exchange for payment and conducted a search of his medical office. United States' Resp. to Def.'s Mot. to Suppress at 1 ("Gov't Resp.") [DE-19]; Indictment at 1 [DE-1]; Tr. 4:13. As part of its investigation of Reese, the SBI conducted interviews of Reese's employees, including defendant, who was interviewed by Agent German and now-retired SBI Agent Dan J. Stone ("Agent Stone"). Tr. 5:17-18; Decl. of Dan J. Stone ¶2 ("Stone Decl.") (DE-19-4), Ex. C. The SBI did not consider defendant a suspect or target of the investigation and Agent German was not aware of any potential criminal charges against defendant. Tr. 4:16-17, 8:15-17, 19:15-16.

Agent German met defendant at the urgent care and asked her to be interviewed. Tr. 5:11-13, 9:21-25. Defendant agreed to be interviewed. Mot. to Suppress at 1; Burney Aff. ¶¶ 6-7. Agent German and Agent Stone then escorted defendant to an office within the urgent care facility where the interview took place. Tr. 10:1-3. Agent German advised defendant that she was a witness and was free to leave the interview at any time. Tr. 5:16-18, 12:4-8; Mot. to Suppress at 1-2.

Agent German asked defendant questions during the interview while Agent Stone observed. Tr. 8:22-24, 13:6-7. He stated the interview was typical of other witness interviews in that there was a lot of "small talk" between himself and defendant. Tr. 13:16-17. During the course of the interview, he repeated defendant's answers to his questions, confirming his understanding of defendant's responses. Tr. 13:18-20, 14:5-8. At the conclusion of the interview, Agent German reviewed his notes with defendant, who confirmed their accuracy. Tr.

2

14:9-13. Agent German described the interview of defendant as normal, and indicated that defendant did not appear nervous, nor was she confrontational. Tr. 6:11-14, 17:23-24. Neither Agent German nor Agent Stone raised their voices during the interview with defendant, nor did they handcuff or otherwise physically restrain defendant at any time. Tr. 6:15-22.

Defendant's account of the interview, however, contradicts Agent German's rendition. In particular, defendant avers that both agents asked her questions and became agitated when she would not corroborate their suspicions of Reese. Mot. to Suppress at 2; Burney Aff. ¶ 9. Moreover, she "never felt free to leave" and as a result of the fear experienced during the course of her interview, she urinated on herself. Burney Aff. ¶¶14-16. When questioned about these statements, Agent German explained that "there wasn't anything unusual about the interview...she did not appear to be nervous" and German did not observe anything indicating that defendant had urinated on herself. Tr. 6:13-14, 7:3-9, 17:23-24.

## DISCUSSION

Defendant has moved to suppress all statements made during the April 9, 2003 interview on the grounds that the interview was a custodial interrogation undertaken without the prior provision of *Miranda* warnings. [DE-18]. In particular, defendant contends that the interview was custodial for the following reasons: (1) the closed-door interview lasted approximately two hours; (2) the interview was conducted by two agents who played "good cop, bad cop," both of whom became frustrated when defendant's responses did not comport with their suspicions of Reese; and (3) the interviewing tactics of the agents made defendant feel like a criminal and frightened defendant to the point that she urinated on herself. Mot. to Suppress at 2-3; Burney Aff. ¶¶8, 10, 13, 15-16. The government contends that the interview was not custodial. [DE-19].

3

Before addressing the substantive issues, the court considers first the weight, if any, this court should afford defendant's affidavit testimony. After observing the testimony of the government's witness at the hearing and assessing his demeanor on the stand through direct and cross examination, the court finds the testimony of the government's witnesses to be credible and consistent. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court). Conversely, this court recommends assigning little credibility to defendant's affidavit.

Persons subjected to custodial interrogation are entitled to the procedural safeguards prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966). *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). In *Miranda*, the Supreme Court recognized that "in-custody interrogation" places "inherently compelling pressures" on persons interrogated. *Miranda*, 384 U.S. at 467. Thus, to safeguard the Fifth Amendment privilege against self-incrimination, *Miranda* warnings must be provided during custodial interrogations. *Id.* at 444. Absent formal arrest, *Miranda* warnings only apply "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam).

The question of whether an individual is "in custody" for purposes of *Miranda* must be made on a case-by-case basis. *United States v. Jones*, 818 F.2d 1119, 1123 (4th Cir.1987); *Davis v. Allsbrooks*, 778 F.2d 168, 171 (4th Cir. 1985). In determining whether a person is "in custody," the question is whether, examining the totality of the circumstances, a reasonable person in defendant's position would have felt "at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a formal arrest or restraint

4

on freedom of movement of the degree associated with a formal arrest."); *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006). Accordingly, the subjective opinion of defendant as to the manner of the interview is not at issue. *See United States v. Stanley*, 597 F.2d 866, 869 (4th Cir. 1979) (individual's subjective view that questioning took place in "coercive environment" does not trigger necessity of Miranda warnings); *Davis*, 778 F.2d at 171 (citation omitted). Indeed, the Fourth Circuit has recognized that "any encounter with police may be both anxious and unpleasant no matter what kind of treatment the individual receives." *Davis*, 778 F.2d at 172. In making the "in custody" determination, courts may consider a variety of factors, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) the use of coercive tactics including hostile voice tones, displaying weapons, or physically restraining the suspect; and (5) whether the suspect voluntarily submitted to questioning. *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006) (citations omitted), *cert. denied*, 547 U.S. 1208 (2006); *see also Yarborough v. Alvarado*, 541 U.S. 652, 669 (2004) (considering factors such as coercive tactics, length of the interrogation and whether defendant was offered a break in determining whether a defendant was "in custody").

Considering all the circumstances, the court concludes defendant was not "in custody" during the April 9, 2003 interview for purposes of advising defendant of her rights under *Miranda*. While the length of defendant's interview may weigh in favor of finding custody, *see Yarborough*, 541 U.S. at 665 (citing defendant's two-hour interview as a factor weighing in favor of the view that defendant was "in custody"); *see also United States v. Fernandez-Ventura*, 132 F.3d 844, 847 (1st Cir.) (finding that the duration of the interrogation, on its own, is not a determinative factor), the following factors militate against finding that defendant was "in

5

custody." First, Agent German informed defendant she was only a witness and free to leave. *See United States v. Fish*, 432 F.2d 107 (4th Cir. 1970) (holding defendant was not "in custody" where investigation had not focused on defendant); Tr. 5:17-18, 12:4-8. Second, the interview occurred at defendant's place of employment. *See United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (listing questioning of defendant at place of employment as factor weighing in favor of non-custody determination); *United States v. Mahan*, 190 F.3d 416, 421-22 (6th Cir. 1999) (finding defendant not "in custody" where questioning took place at place of employment). Third, defendant was not physically restrained and there is no evidence that the conversation between the agents and defendant was threatening in tone. *See United States v. Uzenski*, 434 F.3d 690, 704-05 (4th Cir. 2006) (concluding defendant was not "in custody" where tone of discussion was not threatening and he was not forcibly restrained). Finally, defendant voluntarily submitted to questioning. Mot. to Suppress at 1.

The facts in this case fail to support defendant's claim that a reasonable person in her position would have understood that she was "in custody." Judged by a "totality of the circumstances" standard, defendant's freedom of action was not curtailed to a degree associated with formal arrest.

## CONCLUSION

For the reasons set forth above, this court RECOMMENDS that defendant's Motion to Suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation.

Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 14th day of November, 2008.

_____
Robert B. Jones, Jr.
United States Magistrate Judge